1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

VEDATECH, INC, VEDATECH KK, MANI        No C 04-1249 VRW
12  SUBRAMANIAN (an individual),                04-1818 VRW
                                                04-1403 VRW
13          Plaintiffs,
                                            ORDER
14          v

15  ST PAUL FIRE & MARINE INSURANCE
    CO, QAD INC, QAD JAPAN KK,
16  RANDALL WULFF (an individual),

17          Defendants.

18  _____/

19

20

21          Mani Subramanian (Subramanian) owns Vedatech, Inc and

22  Vedatech KK (collectively "Vedatech") and appears in the cases at

23  bar in *propria persona*.  Subramanian and Vedatech have brought suit

24  against defendant QAD Inc (QAD) which moves in No 04-1249 to

25  dismiss Subramanian's and Vedatech's first amended complaint (FAC)

26  pursuant to FRCP 12(b)(6) and 41(e).  Doc #44.  Next, defendant QAD

27  Japan K K (QADKK) also moves in 04-1249 to dismiss the FAC pursuant

28  to FRCP 12(b)(5) and (b)(6).  Id.  Defendant Randall Wulff (Wulff)

United States District Court

For the Northern District of California

moves in 04-1249 the court to dismiss the FAC pursuant to FRCP 12(b)(6) and 41(e). Doc #52. Next, defendant St Paul Fire & Marine Insurance Company (St Paul) moves in 04-1249 to dismiss the FAC pursuant to FRCP 12(b)(6). Doc #45. Additionally, all defendants seek sanctions pursuant to FRCP 11 or 28 USC § 1927. (04-1249 Docs ##86, 97, 106). Subramanian and Vedatech seek sanctions pursuant to FRCP 11 against Wulff. (04-1249 Doc #61). Finally, St Paul seeks to remand Nos 04-1403 and 04-1818 to Santa Clara superior court. (C-04-1818 Docs ##7, 19) (C-04-1403 Docs ##11, 40).

# I

## A

### *The First Action*

On January 26, 1998, QAD and QADKK filed suit against plaintiffs Vedatech Inc and Vedatech KK (collectively "Vedatech") and Mani Subramanian ("Subramanian"), owner of all Vedatech entities, in the Santa Clara superior court (hereinafter, the "first action"). The first action arose out of contractual and tort disputes between QAD, QADKK, Vedatech and Subramanian regarding QAD's hiring (and firing) of Vedatech and Subramanian to develop computer software in Japan. The substance of the allegations in the first action need not be recited in depth. Suffice it to say, QAD's and QADKK's allegations were premised entirely on state law.

## B

### *The Second Action*

**United States District Court**

For the Northern District of California

1    In September 1999, Vedatech and Subramanian filed their
2  own action in the Santa Clara superior court against QAD, QADKK,
3  Arthur Anderson LLP, Foon Lee and John Doordan alleging fourteen
4  causes of action including, but not limited to, breach of contract,
5  fraud, constructive fraud, negligent misrepresentation, trade libel
6  and state unfair competition (hereinafter, the "second action").
7  Like the first action, all claims in the second action were
8  premised entirely on state law.  In the second action, Vedatech and
9  Subramanian alleged that these defendants conspired to sabotage
10 (and did sabotage) Vedatech and Subramanian's contractual
11 performance of developing software for QAD and QADKK in Japan.  QAD
12 and QADKK filed a counterclaim in the second action essentially
13 duplicating their affirmative allegations in the first action.  The
14 first and second actions were consolidated in late 2001 and
15 assigned to Judge Jack Komar (hereinafter, the "consolidated
16 action").

17

18                                    C

19                            *The Third Action*

20    Between 1997 and 2000, St Paul issued Vedatech various
21 policies of comprehensive general liability insurance.
22 Accordingly, on January 14, 1999, Vedatech and Subramanian tendered
23 to St Paul the defense of Vedatech and Subramanian in the first
24 action.  St Paul agreed, under a reservation of rights, to provide
25 a defense for Vedatech and Subramanian in the first action (where
26 they were defendants) on May 5, 1999.  Moreover, the language of
27 the insurance policy stated, in pertinent part, that "St Paul may,
28 at [its] discretion, investigate any 'occurrence' and settle any

3

United States District Court

For the Northern District of California

claim or suit that may result."  St Paul explicitly declined to defend Vedatech and Subramanian regarding the cross-claims filed by QAD and QADKK in the second action.

After almost five years of defending Vedatech and Subramanian in the first action, it became clear to St Paul that the events giving rise to the first action occurred entirely in Japan.  St Paul's insurance policy with Vedatech and Subramanian, however, provided only domestic coverage.  Unsurprisingly, a dispute arose between Vedatech and Subramanian and St Paul regarding liability coverage and indemnity issues under the insurance agreement.  Based upon these disputes, on February 8, 2002, St Paul filed an action for declaratory relief (hereinafter, the "third action") in the Santa Clara superior court against Vedatech and Subramanian seeking a judicial determination regarding the scope of St Paul's duty to defend and indemnify Vedatech and Subramanian in the entire consolidated action.  Vedatech and Subramanian then began asserting that St Paul's duty to defend extended to the second action as well.

Not to be outdone, Vedatech and Subramanian filed a counterclaim against St Paul alleging a pattern of unfair competition in denying benefits, breach of contract and bad faith. Also in the counterclaim, Vedatech and Subramanian asserted, for the first time, that St Paul had a duty to fund the prosecution of Vedatech and Subramanian's affirmative claims in the second action. On June 26, 2002, Subramanian individually removed the third action to this court on the basis of diversity jurisdiction.  On October 21, 2002, however, Judge Fogel remanded the third action pursuant to 28 USC § 1446 because Vedatech had not joined Subramanian in the

**4**

United States District Court

For the Northern District of California

petition for removal.  See C-02-3061, Doc #31 (Remand Order).  This brief stint in Judge Fogel's court was only the first time, but far from the last, that these parties would darken this court's doors.

D

*Court-Ordered Mediation of Consolidated Action*

In the meantime, Judge Komar set the consolidated action for trial on May 3, 2004, in state court.  While Subramanian appeared *pro se*, Vedatech was represented at all times by counsel, namely Christina Gonzaga (Gonzaga) of the Law Office of James S Knopf.  On January 13, 2004, Judge Komar <u>verbally</u> <u>ordered</u> all parties to the consolidated action (including St Paul as Vedatech's insurer) to attend mediation before Wulff, a private mediator.  C 04-1249 VRW, Doc #87, Ex F at 17:13-14 (transcript) (Judge Komar stated:  "Right now, I'm <u>ordering</u> you [Vedatech and Subramanian] to go to mediation") (emphasis added).  Judge Komar chose Wulff based upon St Paul's representation that Wulff was a very skilled mediator whom St Paul had previously worked with on other mediation proceedings.  On March 4, 2004, Judge Komar, <u>in writing</u>, ordered all parties to attend the Wulff mediation on March 12, 2004.  Id, Ex H (Med Order).

On March 12, 2004, the mediation was held before Wulff with all parties attending.  At the mediation, all parties were required to sign a confidentiality agreement that provided, in pertinent part, that "all parties agree that the mediator * * * ha[s] no liability for any act or omission in connection with the mediation."  Doc #54, Ex A (Conf Agreement).  Subramanian signed the confidentiality agreement on his own behalf and Gonzaga (as

United States District Court

For the Northern District of California

well as James Knopp) signed the agreement on behalf of Vedatech. Id.  Although Subramanian altered the wording of portions of the document, those changes did not alter the relevant language quoted above.

The mediation commenced at 9:30 am and continued until 4:00 pm when Subramanian and Vedatech's attorneys abruptly left the mediation.  But St Paul (as Vedatech's insurer), QAD and QADKK elected to continue the mediation and eventually reached a settlement of the consolidated action (the "settlement agreement"). Under this agreement, QAD and QADKK agreed to release and dismiss, with prejudice, the entire first action (as well as all counterclaims asserted by QAD and QADKK in the second action).  Doc #46, Ex A (Sett Agreement).  In consideration of this dismissal, St Paul agreed to pay QAD and QADKK the sum of $500,000.  Id at 3. This agreement was signed and executed by QAD, QADKK and St Paul on March 25, 2004.  Id at 6-7.  Moreover, the settlement agreement specifically provided that Vedatech and Subramanian could continue to litigate their affirmative claims against QAD and QADKK in the second action.  Id.  Whether St Paul was contractually obligated to fund such prosecution was, of course, a hotly contested issue in the third action.

E

*The Fourth Action*

To say that Vedatech and Subramanian were unhappy with the settlement agreement would be an understatement.  Specifically, they were unhappy with the settlement agreement to the extent it apparently relieved St Paul from its duty (a duty St Paul vigorously disputes in the third action) of having to prosecute

United States District Court

For the Northern District of California

Vedatech's and Subramanian's affirmative claims in the second action.  Vedatech and Subramanian turned their anger into action and on March 30, 2004, they filed a lawsuit, in federal court, alleging seven causes of action against St Paul, QAD, QADKK, Wulff and 50 "Doe" defendants (hereinafter, the "fourth action").  This action, based on diversity jurisdiction, was assigned to the undersigned.  C 04-1249 VRW Doc #1.  Vedatech and Subramanian filed their first amended complaint on June 15, 2004.  Doc #36 (FAC).  The FAC is currently the operative complaint in the fourth action.

The seven "causes of action" pled in the FAC include: (1) declaratory judgment, (2) injunctive relief, (3) fraud, (4) constructive fraud, (5) negligent misrepresentation, (6) insurance bad faith and (7) unfair competition.  The sum and substance of Vedatech and Subramanian's 49-page (sometimes unintelligible) FAC appears to be that St Paul, QAD, QADKK, Wulff and 50 unknown defendants covertly conspired and colluded to get Vedatech and Subramanian to "consent" to mediate the consolidated action.  Doc #36 at 19 (stating that Vedatech and Subramanian were "tricked into 'consenting' to mediation before Wulff").  Once this fraudulent plan came to fruition and the mediation took place, the defendants further conspired in an effort to settle the consolidated action on terms that were not in Vedatech and Subramanian's best interests.  Id at 9 (stating that St Paul "formulated a strategy for using the secrecy of mediation as a cover for engaging in collusive and bad faith negotiations with QAD * * * and Wulff").  As discussed above, the settlement agreement was not "favorable," according to Vedatech and Subramanian, because it "weaken[ed] Vedatech's [and Subramanian's] legal representation

7

United States District Court

For the Northern District of California

for the affirmative claims" involved in the second action.   Id at
19.   The FAC was signed by Subramanian, on his own behalf, and
Gonzaga, as counsel for Vedatech.   All defendants, save the unknown
"Doe" defendants, have separately moved for dismissal of the FAC on
various grounds.   These dispositive motions are currently before
the court.


                                   F

                        *The Removal Rampage*

          Vedatech and Subramanian's anger did not end with the
filing of the fourth action in federal court:   The settlement
agreement sent Vedatech and Subramanian on what can only be
described as a removal rampage.   As described in depth below, from
March 15, 2004, to May 6, 2004, Vedatech and Subramanian filed <u>four</u>
petitions for removal in this court; two petitions involved the
consolidated action (the action subject to the settlement
agreement) and two petitions involved the third action.


                                   1

                            *Removal #1*

          On March 15, 2004, before St Paul and QAD had finalized
the settlement agreement, Vedatech and Subramanian removed the
consolidated action to this court.   The removal petition was
assigned to Judge Hamilton.   C-04-1035 PJH.   Vedatech and
Subramanian purportedly removed the consolidated action pursuant to
28 USC § 1446(b), asserting that federal question jurisdiction had
arisen on March 10, 2004.   In support of the removal, they offered
an interrogatory response from QAD and QADKK in which QAD claimed

                                   8

that it reserved all of its rights, including copyrights, in the software that Vedatech and Subramanian had created in Japan. According to Vedatech and Subramanian, this interrogatory response revealed that the basis for QAD's state law claims in the consolidated action was, in actuality, the Copyright Act, 17 USC §§ 101 et seq.  Since the consolidated action, according to Vedatech and Subramanian, would now require an interpretation of the federal Copyright Act, the consolidated action was removable pursuant to 28 USC § 1446(b).


## 2

### *Removal #2*

Additionally, on April 12, 2004, Vedatech and Subramanian removed the third action to this court pursuant to 28 USC § 1446(b).  This removal petition, which contained nine exhibits and totaled hundreds of pages, was assigned to Judge Conti.  C 04-1403 SC.  Vedatech and Subramanian's "removal logic" goes as follows: For St Paul to prevail in the third action (the insurance declaratory relief action), St Paul would be required to "litigate the issues in the underlying cases [i e, consolidated action]," which, as asserted by Vedatech and Subramanian, were now removable pursuant to 28 USC § 1446(b).  Thus, according to Vedatech and Subramanian, because the consolidated action now raised a federal question (i e, application of the Copyright Act) and because St Paul would necessarily have to litigate this federal question to prevail in the third action, the third action itself was now removable.

//

9

1

2

**3**

***Remand #1***

3    On April 29, 2004, Judge Hamilton remanded the

4   consolidated action finding: (1) the consolidated action raised no

5   federal question and thus the court lacked subject matter

6   jurisdiction and (2) even if subject matter jurisdiction existed,

7   the removal was untimely.  C 04-1035, Doc #43 (Remand Order).

8   Vedatech and Subramanian appealed Judge Hamilton's April 29, 2004,

9   remand order to the United States Court of Appeals for the Ninth

10  Circuit.  C-04-1305, Doc #48 (Not App).  On August 16, 2004, the

11  Ninth Circuit dismissed Vedatech and Subramanian's appeal pursuant

12  to 28 USC § 1447(d).

13

14

**4**

***Removal #3* and *Remand #2***

16    Not content to wait for the Ninth Circuit, Vedatech and

17  Subramanian on May 6, 2004, filed a new petition for removal of the

18  consolidated action pursuant to 28 USC § 1446(b).  This new

19  petition was <u>63</u> pages long and contained 146 paragraphs purporting

20  to demonstrate that Judge Hamilton had clearly erred in remanding

21  the consolidated action and again argued that federal jurisdiction

22  existed in the consolidated case pursuant to 28 USC § 1446(b).  The

23  new removal petition was assigned to Judge Ware.  Judge Hamilton,

24  however, intervened on May 26, 2004, and related the second removal

25  petition to the first petition.  C-04-1806 PJH, Doc #15 (Related

26  Case Order).  QAD and QADKK filed yet another motion to remand, Doc

27  #16, and Vedatech and Subramanian immediately sought to have Judge

28  Hamilton <u>recused</u> from adjudicating the motion to remand.  Judge

United States District Court

For the Northern District of California

Hamilton denied the recusal motion and again heard oral arguments on the motion to remand the consolidated case.  On July 16, 2004, Judge Hamilton remanded the consolidated action for the second time.  In her order, Judge Hamilton stated:  "As was true when this same action was [first] removed * * *, the present notice of removal does not establish the existence of a federal question." Doc #45 (Remand Order).  Moreover, Judge Hamilton stated that "should the removing parties remove this action yet another time, the court will invite the QAD parties * * * to file a motion for sanctions under [FRCP] 11."  Id.

Vedatech and Subramanian appealed Judge Hamilton's second remand of the consolidated case to the Ninth Circuit.  Doc #47. The Ninth Circuit, however, dismissed this appeal on August 16, 2004, citing 28 USC § 1447(d).  Astonishingly, on August 30, 2004, Vedatech and Subramanian filed a petition for rehearing en banc of the Ninth Circuit's August 16, 2004, order dismissing their appeal of both of Judge Hamilton's remand orders.  On February 16, 2005, the petition for rehearing en banc was denied and on February 23, 2005, Vedatech and Subramanian filed a motion to stay the Ninth Circuit's mandate.  As of the date of this order, the motion to stay is still pending before the Ninth Circuit.  The court will not speculate whether Vedatech and Subramanian intend to petition the Ninth Circuit's order to the United States Supreme Court for certiorari.

5

*Removal #4*

Falling further down the rabbit hole, on May 7, 2004,

United States District Court
For the Northern District of California

Vedatech and Subramanian filed a second petition for removal in the third action, which, as described above, had <u>already been removed</u> and assigned to Judge Conti for remand determination.  C-04-1403 SC.  What is more, Judge Conti had not yet remanded the third action to state court; St Paul's motion to remand was still pending before Judge Conti.  The second petition for removal of the third action was assigned to Judge Fogel.  C-04-1818 JF.  The second petition for removal of the third action was signed by Subramanian and Gonzaga.

E

*Present Status of Litigation*

In an attempt to corral this removal beast, on July 2, 2004, the undersigned related the fourth action (04-1249 VRW) and <u>both</u> of Vedatech and Subramanian's petitions for removal of the third action (04-1403 VRW and 04-1818 VRW).  The court has received St Paul's motion to remand, Vedatech and Subramanian's opposition and St Paul's reply.  C-04-1403, Docs ##11, 25, 30.  Accordingly, the issue whether to remand the third action has been fully briefed, is currently before the court and is ripe for adjudication.

In the meantime, Vedatech and Subramanian filed a motion to impose sanctions pursuant to Rule 11 against Wulff in the fourth action.  Doc #61.  Wulff opposes this motion.  Doc #63.  This motion is also before the court.

On September 16, 2004, the court heard oral arguments regarding (1) the three motions to dismiss the FAC, (2) St Paul's

12

United States District Court

For the Northern District of California

motion to remand the third action and (3) Vedatech and Subramanian's motion for Rule 11 sanctions against Wulff.  Doc #83. At oral argument, the court invited St Paul, QAD, QADKK and Wulff to file motions for sanctions pursuant to 28 USC § 1927 and Rule 11 against Vedatech and Subramanian.  Id.  All three have since filed such motions.  It is also worth noting that less than one month after the hearing, on October 9, 2004, Gonzaga filed a motion to withdraw as Vedatech's attorney.  (04-1249 Doc #90) (04-1403 Doc #47) (04-1818 Doc #27).  The court denied this request on October 15, 2004.  (02-1249 Doc #95) (04-1403 Doc #47) (04-1818 Doc #27). On March 16, 2005, Gonzaga (having apparently left the Law Offices of James Knopf) and Knopf himself filed a second motion to withdraw as Vedatech's attorney.  (02-1249 Doc #148) (04-1403 Doc #70) (04-1818 Doc #51).  This second motion is currently pending.

        Accordingly, for the sake of clarity, the court will summarize the motions that are currently pending before this court. First, St Paul moves this court to remand the third action to state court.  (04-1403 Docs ##11, 40) (04-1818 Docs ##7, 19).  Second, QAD, QADKK, St Paul and Wulff separately move to dismiss the FAC in the fourth action.  (04-1249 Docs ##44, 45, 52).  Third, Vedatech and Subramanian request sanctions against Wulff pursuant to FRCP 11.  (04-1249 Doc #61).  Fourth, St Paul, QAD, QADKK and Wulff request sanctions pursuant to FRCP 11 and costs and fees pursuant to 28 USC § 1927 against Vedatech and Subramanian.  (04-1249 Docs ##86, 97, 106) (St Paul 04-1403 Doc #52) (St Paul 04-1818 Doc #32).

        Gonzaga and Knopf move to withdraw as counsel of record for Vedatech.  (04-1249 Doc #148) (04-1403 Doc #70) (04-1818 Doc

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

#51).  Additionally, Gonzaga and Knopf have filed a motion to strike portions of Subramanian and Vedatech's opposition to their second motion to withdrawal.  (04-1249 Doc #154) (04-1403 Doc #74) (04-1818 Doc #55).  Subramanian and Vedatech have filed a motion requesting additional oral argument.  (04-1249 Doc #112) (04-1403 Doc #63) (04-1818 Doc #43).

Taking a deep breath, the court proceeds to attempt to resolve these disputes.

II

*Motion to Remand*

As discussed above, Vedatech and Subramanian's first petition for removal of the third action (a state declaratory relief action regarding insurance contracts) is based on one single piece of logic:  "the removability of the underlying [consolidated action] attaches *mutatis mutandis* to the removability of the insurance case [third action]."  C 04-1403, Doc #6 (Rem Pet) at 5. Moreover, the second petition for removal states that "the [consolidated action] [is] completely preempted by [the Copyright Act].  This, in turn, justifies removal of this derivative action [third action]."  C 04-1818, Doc #1 (Rem Pet) at 5.

The court expresses no opinion regarding whether Vedatech and Subramanian's logic is correct.  Assuming arguendo that this logic is correct, it is clear that the absence of a federal question in the consolidated action would render the third action unremovable.  As mentioned above, this court (per Judge Hamilton) has not once, but <u>twice</u>, held that the consolidated action contains

14

no federal question sufficient to confer removal jurisdiction pursuant to 28 USC § 1446(b) and has <u>twice</u> remanded the consolidated action to state court.  In fact, Subramanian and Vedatech have been threatened with sanctions by Judge Hamilton should they try again to remove the consolidated action to this court.

Accordingly, the question whether a federal question exists in the consolidated action has been answered in the negative by Judge Hamilton — <u>twice</u>.  Under plaintiffs' own logic, because there is no federal question in the consolidated action, this court must remand the third action for lack of subject matter jurisdiction pursuant to § 1447(c).

Moreover, even if Judge Hamilton's remands were in error (which clearly they were not) and even if the consolidated action between QAD, QADKK, Vedatech and Subramanian hinged entirely on the adjudication of the Copyright Act, this court would <u>still</u> lack subject matter jurisdiction over the third action.

As discussed above, the third action is an action for declaratory relief brought by St Paul.  St Paul seeks a judicial determination whether it has a duty to defend Vedatech in the consolidated action if the events underlying the consolidated action occurred in Japan.  This is a matter governed completely by California law.  Under California law, "it has long been a fundamental rule of law that an insurer has a duty to defend an insured if [the insurer] becomes aware of, or if the third-party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement."  <u>**Waller v Truck Insurance Exchange,**</u>

15

United States District Court

For the Northern District of California

*Inc*, 11 Cal 4th 1, 19 (1995) (citing <u>Gray v Zurich Insurance Co</u>, 65 Cal 2d 263, 276 (1966)).  Accordingly, whether St Paul is under a duty to defend Vedatech in the consolidated action is determined by comparing the facts alleged in the consolidated action complaint and the language of the insuring agreement between St Paul and Vedatech.  Even if the underlying claims were federal copyright claims (which they are not), resolution of the third action would hinge on whether the insuring agreement's scope was broad enough to encompass federal copyright claims arising from events that occurred in Japan.  This analysis in no way involves interpretation of the Copyright Act; it is simply a matter of state contract interpretation.

Further, although Vedatech and Subramanian are diverse from St Paul, they cannot base their two petitions for removal on this fact; 28 USC 1446(b) requires a defendant to file a petition for removal within thirty days of the point when diversity jurisdiction is established.  Vedatech's and Subramanian's petitions were filed more than two years after St Paul initiated the third action in state court.

No federal question exists in the third action and thus Vedatech and Subramanian's removal pursuant to 28 USC § 1446(b) was improper.  Accordingly, St Paul's motion to remand 04-1403 and 04-1818 is GRANTED and the court REMANDS these cases to the Santa Clara superior court pursuant to 28 USC § 1447(c).

St Paul requests that the court order Vedatech and Subramanian to pay St Paul's reasonable attorney fees and costs incurred in these motions to remand.  28 USC § 1447(c) provides in

16

United States District Court

For the Northern District of California

relevant part:  "An order remanding the case may require payment of just costs and any actual expenses, including attorney[] fees, incurred as a result of the removal."  As this court stated in Moore v Kaiser Foundation Hospitals, Inc, 765 F Supp 1464, 1466 (ND Cal 1991), aff'd 981 F2d 443 (9th Cir 1992):

> As a matter of public policy, the party forced to bring a motion to remand an improperly removed case generally should be fully reimbursed for its costs in remanding the case whether the removal was in bad faith or otherwise.  The court's award of fees in this case is not a punitive award against defendants; it is simply reimbursement to plaintiffs of wholly unnecessary litigation costs the defendants inflicted.  Attorney fees spent to remand an improperly removed case without bad faith cost just as much as fees spent to remand a case removed in bad faith.

The court orders the remand of this case and, accordingly, finds that an award of reasonable attorney fees is appropriate.  To determine a reasonable attorney fee award, the court employs the lodestar method, under which the court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  Yahoo!, Inc v Net Games, Inc, 329 F Supp 2d 1179, 1182 (ND Cal 2004).  "[T]o convert the data provided by fee applicants to a 'reasonable attorney fee,' the court first compares the requested number of hours to the number of hours that 'reasonably competent counsel' would have billed."  Id at 1188.

St Paul requests 108.5 hours for services performed by attorneys in connection with (1) the preparation and filing of both motions to remand, (2) its reply to Vedatech's and Subramanian's opposition to its motions to remand and (3) preparation for the September 16, 2004, hearing.  Doc #98, Ex A.  Having considered the

nature of the complex legal questions created by Vedatech's and Subramanian's voluminous and repetitive removal petitions and memoranda, as well as the quality of the attorneys' work, the court finds the claim for 108.5 hours of attorney time to be reasonable in preparing and defending its motions to remand in these cases.

The court now turns to determining a reasonable hourly rate. More than one methodology exists to make this determination. In **Laffey v Northwest Airlines, Inc**, 572 F Supp 354 (D DC 1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir 1984) the court employed a variety of hourly billing rates to account for the various attorneys' different levels of experience. The **Laffey** methodology is useful when an unusually large fraction of either senior or junior attorney time is necessary, and spent, by counsel on behalf of a client. The **Laffey** methodology allows the court to reflect in the fee award the disproportion of the time spent by senior or junior attorneys at a rate commensurate with such attorneys' market hourly rate. Cf **In re HPL Technologies Inc, Securities Litigation**, 2005 US Dist LEXIS 7244 (ND Cal 2005) (Walker, J). In this case, 13.3 hours were spent by James Greenan who claimed a billing rate of $250/hour and 96 hours by Enoch Wang who claimed a $185/hour billing rate. St Paul requests total fees of $20,738.75. Doc #162 at 2; Doc #98, Ex A.

A "blended hourly rate" rather than the **Laffey** methodology would appear sufficient in this case to reflect the market rate for counsel's services. This is because "[t]he purpose of using prevailing market rates is to estimate the hourly rate reasonably competent counsel would charge[,] * * * [and] not to determine whether or not a specific attorney could command a

United States District Court

For the Northern District of California

specific hourly rate in the market."  The court concludes, therefore, that "the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney."  Yahoo!, 329 F Supp 2d at 1185.

In several of the court's previous orders, the court has calculated an average market rate in the local legal community as a whole using public data from the United States Census Bureau and Bureau of Labor Statistics ("BLS").  See, e g, Yahoo!, 329 F Supp 2d 1179; Allen v BART, 2003 WL 23333580 (N D Cal 2003); Gilliam v Sonoma City, 2003 WL 23341211 (N D Cal 2003).  In Yahoo!, the court explained that:

> The BLS provides data on the hourly wages
> earned by attorneys * * *.  To estimate the
> hourly rates billed to clients, the court first
> calculated the ratio of net receipts to gross
> receipts from data compiled by the Census
> Bureau.  This ratio was used to approximate the
> overhead costs that would be incorporated in
> the hourly rates billed to clients.  The court
> then divided the BLS wage data (*w*) by the ratio
> of net receipts (*nr*) to gross receipts (*gr*) to
> determine an estimated average market rate (*r*)
> * * *.

Id at 1189.

This methodology is represented by the following equation:  $r = w / (nr/gr)$.  Stated another way, the average market rate $r = w * (gr/nr)$.  The most recent census data describing gross and net receipts by law partnerships are located in "Statistical Abstract of the United States:  2004-2005" ("2004 Statistical Abstract").  See United States Census Bureau, Statistical Abstract of the United States:  2004-2005, tbl 718, available at

19

United States District Court

For the Northern District of California

http://www.census.gov/statab/www/.  The 2004 Statistical Abstract provides gross and net receipts for the year 2001.  For law partnerships, gross receipts totaled $91 billion and net receipts totaled $32 billion.  This yields a ratio of net receipts to gross receipts of 0.351.  Even though these data are four years old, it is adequate for present purposes because law firm economics should not vary significantly over such a short period.

The most recent data available from the BLS describing hourly wages in the San Francisco area are located in "November 2003 Metropolitan Area Occupational Employment and Wage Estimates San Francisco, CA PMSA," available at http://www.bls.gov/oes/current/oes_7360.htm#b23-0000 ("2003 BLS Wage Estimates").  The BLS provides wage estimates for "Legal Occupations" in the year 2003.  The BLS's estimates for lawyers are a median hourly wage of $65.01/hr and a mean hourly wage of $70.23/hr.  Id.  As in Yahoo!, the court selects the higher of the median or mean hourly wage because it is more favorable to the party seeking the grant of attorney fees.  Id at 1191.

Dividing the most recent mean hourly wage for lawyers, $70.23/hr, by the most recent ratio of net to gross receipts, 0.351, yields an estimate of $200/hr (rounded down from $200.08/hr) as the average market rate for lawyers in the San Francisco area.  This, of course, is fairly close to the claimed hourly rate of St Paul's counsel.  It should not be surprising that a large insurance company would not allow itself to be overcharged for attorney services and indeed it appears that St Paul has done just that.  In any event, the court finds that a reasonable or market value attorney fee for the work of St Paul's counsel is:  108.5 hours at

**United States District Court**

For the Northern District of California

$200/hr, yielding a total of $21,700.  Accordingly, $20,738.75, the amount requested by St Paul, is a reasonable attorney fees award; indeed, it is actually almost $1,000 <u>less</u> than the court's calculation of a market value fee.  Given the unitary nature of both petitions for removal, Vedatech and Subramanian are jointly and severally liable for the full amount of St Paul's attorney fees.  <u>Kona Enterprises, Inc v Estate of Bishop</u>, 229 F3d 877, 888-89 (9th Cir 2000); see also <u>Pekarsky v Ariyoshi</u>, 575 F Supp 673, 676-77 (D Hawaii 1983) (Schwarzer, J).

Finally, the court turns to St Paul's motion for sanctions pursuant to FRCP 11(c)(1)(A).  This is an appropriate instance in which to impose FRCP 11 sanctions, as filing a frivolous removal petition can be grounds for imposition of Rule 11 sanctions if there is no "good faith argument" for removal.  <u>Hewitt v City of Stanton</u>, 798 F2d 1230, 1233 (9th Cir 1986); accord <u>Midlock v Apple Vacations West, Inc</u>, 2005 US App LEXIS 6718 (7th Cir 2005).

The court will liberally construe the phrase "good faith argument" and thus will not sanction Vedatech and Subramanian for the filing of the <u>first</u> petition of removal (although Vedatech and Subramanian will, as discussed above, pay St Paul's costs on attorney fees associated with the first petition).  No amount of leniency, however, can excuse the frivolousness of the <u>second</u> petition for removal of the third action.  As discussed above, when Vedatech and Subramanian removed the third action for the second time, Judge Conti had not adjudicated the <u>first</u> removal. Accordingly, there was no action to remove from the state court, as this court had jurisdiction over the third action as soon as it was

United States District Court

For the Northern District of California

removed the first time.  28 USC § 1446(d).  To make matters worse, the second petition (which is hundreds of pages in length) essentially duplicates the meritless arguments enumerated in the first petition.  Accordingly, to call the second petition frivolous would be an understatement.  The question is not whether the court should impose sanctions, the question is how much.

Rule 11 applies to *pro se* plaintiffs like Subramanian. <u>Warren v Guelker</u>, 29 F3d 1386, 1390 (9th Cir 1994).  In determining whether to sanction a *pro se* plaintiff, however, the Ninth Circuit urges district courts to use caution.  Id.  But even exercising extreme caution, the court determines sanctions are appropriate against Subramanian.  "Rule 11 is intended to * * * <u>deter</u>[] [parties] who submit motions or pleadings which cannot reasonably be supported in law or fact."  <u>Golden Eagle Distributing Corp v Burroughs Corp</u>, 801 F2d 1531, 1542 (9th Cir 1986) (emphasis added). Subramanian has repeatedly abused the federal removal statutes and shows no signs of stopping this practice.  He has filed not one, but <u>four</u> frivolous petitions for removal, causing continuous and unnecessary congestion of this court's docket.  Moreover, this court (per Judges Hamilton, Fogel, Conti and the undersigned) has expended a large amount of judicial resources in adjudicating these petitions.  Clearly, the only way to deter Subramanian from engaging in this behavior again is to invoke the monetary penalties of Rule 11.

The reprehensible conduct engaged in by Subramanian is magnified when it is applied to Gonzaga, an attorney.  It is clear that Gonzaga (throughout this litigation) has simply signed off on a myriad of frivolous motions and pleadings drafted by Subramanian

United States District Court

For the Northern District of California

-- including all four petitions for removal.  As an officer of this court, Gonzaga owes a duty not to file papers that are procedurally defective and substantively indefensible.  The second petition for removal of the third action alone demonstrates that Gonzaga has <u>egregiously</u> breached her duty to this court.  The only method to deter Gonzaga from engaging in this type of reckless legal representation where she simply signs off on motions drafted by a *pro se* litigant is to invoke Rule 11.

In determining the appropriate amount of sanctions, the court is guided by the touchstone of Rule 11:  Deterrence.  As between Subramanian and Gonzaga, the court concludes it is Subramanian who needs to be deterred more from filing in the future frivolous motions, petitions and complaints.  It is clear from Gonzaga's motion to withdraw as counsel for Vedatech that she is suffering the consequences of simply allowing Subramanian to run the show in this litigation; the court doubts Gonzaga will make this error in judgment again.  Accordingly, the court SANCTIONS Gonzaga $5,000 pursuant to Rule 11.

Turning to Subramanian, the court concludes that although a sanction pursuant to Rule 11 is required to deter future frivolous filings, the large amount of attorney fees and costs already imposed on Subramanian to compensate St Paul and the amount that will be imposed on him to compensate Wulff, see *infra* Part III(B), will certainly serve the function of deterring similar filings in the future.  Accordingly, the court SANCTIONS Subramanian $1,000 pursuant to Rule 11.  Subramanian is admonished, however, that the court will not hesitate to impose much harsher Rule 11 sanctions should he continue to engage in the conduct

described in this order.  If Subramanian files in this court (1) another frivolous petition for removal, (2) any frivolous motions in these cases, (3) a new frivolous cause of action or (4) any other filing worthy of Rule 11 sanctions, the court will impose sanctions at $1,000 per page of each filing.

Pursuant to FRCP 11(c)(1)(2), Gonzaga and Subramanian's sanctions are to be paid to the court on or before July 25, 2005.

Finally, to the extent St Paul seeks sanctions relating to Vedatech and Subramanian's filing of the FAC (as opposed to the two removal petitions), St Paul's motion is DENIED.

III

*Motions to Dismiss*

As mentioned above, in apparent anger over the settlement reached between St Paul, QAD and QADKK regarding the consolidated action, on March 30, 2004, Vedatech and Subramanian filed the fourth action in this court.  Doc #1.  On June 15, 2004, Vedatech and Subramanian filed the FAC.  Doc #35.  Named as defendants in the FAC are:  (1) St Paul, (2) QAD, (3) QADKK, (4) Wulff and (5) 50 "Doe "defendants.  Id.  The 49-page, 160-paragraph FAC is truly a frightful piece of legal work.  The FAC (1) makes dozens of unintelligible factual assertions; (2) is fraught with arguments, unsupported conclusions and case law citations; (3) contains two portions written as if the FAC were an opposition to a motion to dismiss and (4) even contains an internet article concerning mediation.

The complaint lists seven "causes of action": (1) declaratory judgment; (2) injunctive relief; (3) fraud and

United States District Court

For the Northern District of California

conspiracy to commit fraud; (4) constructive fraud and conspiracy to commit constructive fraud; (5) negligent misrepresentation; (6) breach of covenant of good faith and fair dealing; and (7) state unfair competition.  As a preliminary matter, the court must dismiss one of these seven claims out of hand.  Vedatech and Subramanian's "second cause of action" is titled "INJUNCTIVE RELIEF."  Id at 28.  Under California law, however, "[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  <u>Shell Oil Co, Inc v Richter</u>, 52 Cal App 2d 164, 168 (1942)(citing <u>Williams v Southern Pacific R R Co</u>, 150 Cal 624 (1907)).  Accordingly, Vedatech and Subramanian's claim for injunctive relief is dismissed pursuant to FRCP 12(b)(6).

All defendants (save the Doe defendants) move to dismiss the FAC in its entirety under various state and federal rules.

A

*Wulff's Motion to Dismiss*

Vedatech and Subramanian allege five causes of action against Wulff: (1) declaratory judgment; (2) fraud; (3) constructive fraud; (4) negligent misrepresentation and (5) state unfair competition.  In sum, Vedatech and Subramanian appear to allege that Wulff was not a neutral mediator but instead was biased in favor of St Paul which had used his services previously.  Because Wulff was apparently biased towards St Paul, he (1) "tricked" Vedatech and Subramanian into signing the mediation confidentiality agreement, (2) did not terminate the mediation when Vedatech and Subramanian exited and (3) conspired with St Paul and

United States District Court

For the Northern District of California

QAD to create a settlement that harmed Vedatech and Subramanian. The court concludes that Wulff is immune from the claims asserted against him in the FAC.

California law, which this court is required to apply in diversity actions pursuant to Erie Railroad Co v Tompkins, 304 US 64 (1938), grants "quasi-judicial immunity" to persons who "fulfill quasi-judicial functions intimately related to the judicial process." Howard v Drapkin, 222 Cal App 3d 843, 847 (1990). In Howard, the parties to an underlying custody dispute stipulated that a psychologist could act as an independent fact-finder and make non-binding recommendations regarding allegations of physical and sexual abuse to the judge presiding over the dispute. Id at 848. This stipulation was ultimately signed by the court and converted into an order. Id. The child's mother subsequently disagreed with the psychologist's findings and recommendations, asserting that the psychologist (1) was abusive during the six-hour mediation-like setting, (2) negligently prepared her findings so as to include false statements and omit critical information and (3) failed to disclose certain conflicts of interest and lack of expertise in child abuse matters. Id.

Based upon such allegedly inappropriate behavior, the mother filed a civil lawsuit against the psychologist, pleading causes of action for (1) fraud, (2) negligent misrepresentation, (3) professional negligence, (4) intentional infliction of emotional distress and (5) negligent infliction of emotional distress. The psychologist filed a general demurrer, contending that she enjoyed quasi-judicial immunity from the mother's suit. Id at 850. The trial court agreed and sustained the demurrer and

26

United States District Court

For the Northern District of California

the California court of appeal affirmed.

The Howard court began by stating that "under the concept of quasi-judicial immunity, California courts have extended absolute immunity to persons other than judges if those persons act in a judicial or quasi-judicial capacity." Id at 852-53. Such persons include court commissioners, grand jurors, administrative law hearing officers, arbitrators and prosecutors. Id at 853. Moreover, the court explicitly rejected the idea that only "public" officials enjoyed quasi-judicial immunity, for "if that were so, then arbitrators would not be protected by * * * [such] immunity." Id at 854. The court further noted "the relevant policy considerations of attracting to an overburdened judicial system the independent and impartial services and expertise upon which that system necessarily depends." Id at 857. Accordingly, the court held that all "nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process should be given absolute quasi-judicial immunity for damage claims arising from their performance of duties in connection with the judicial process." Id.

"Without [this] immunity, such persons will be reluctant to accept court appointments or provide work product for the courts." Id. Moreover, "in order to best protect the ability of neutral third parties to aggressively mediate and resolve disputes, a dismissal at the very earliest stage of the proceedings is critical to the proper functioning and continued availability of these services." Id at 905 (emphasis added).

Quite appropriately, Wulff cites Howard in support of his motion to dismiss all claims against him in this case. It is very

27

United States District Court

For the Northern District of California

telling that Vedatech and Subramanian's 25-page opposition to Wulff's motion to dismiss devotes only two pages squarely to addressing the Howard decision (while various and unintelligible other references to Howard are sprinkled throughout).  Doc #65 at 15-17.  Inexplicably, Vedatech and Subramanian devote twelve pages of their opposition to reciting (unnecessarily) the status of quasi-judicial immunity under federal law (i e, statutes and Supreme Court decisions).  Id at 3-14 (concluding that "[i]t is clear that federal law is conclusively against the grant of any such immunity to private commercial mediators such as defendant Wulff.").  But it is state law, not federal law, that controls this court's analysis in diversity cases.  See Erie, 304 US 64.

Vedatech and Subramanian's opposition makes, in essence, two arguments why Howard's logic does not mandate the dismissal of all claims against Wulff.  First, they argue that Howard, insofar as it extended quasi-judicial immunity to "neutral third-party participants in the judicial process" was "unnecessary dictum," and thus is not binding on this court under Erie.  Doc #65 at 16.  At one point, Vedatech and Subramanian even make the assertion that Howard's extension of quasi-judicial immunity "is double-dicta."  Id at 15.  Next, Vedatech and Subramanian argue that "it is clear * * * that the California Supreme Court itself is highly unlikely to uphold the [Howard] decision, and most certainly not for the extension of immunity to private commercial mediators."  Id at 2.  The court finds both arguments to be wholly without merit.

Far from being "unnecessary dictum" or "double dicta," Howard's holding that "nonjudicial persons who fulfill quasi-judicial function * * * should be given absolute quasi-judicial

28

United States District Court

For the Northern District of California

immunity" was the court's *ratio decidendi*.  In fact, the court devoted thirteen of the opinion's seventeen pages to the discussion of quasi-judicial immunity.  Moreover, <u>Howard</u> was not appealed to the California Supreme Court and thus the assertion that <u>Howard</u> will not be "upheld" by the California Supreme Court is not only unpersuasive, but plainly wrong.  Nor do Vedatech and Subramanian offer any convincing explanation why the California Supreme Court would disapprove of the reasoning in <u>Howard</u>.  Indeed, <u>Howard</u> has been binding California precedent for over 14 years and a search of subsequent treatment of <u>Howard</u> by California courts does not reveal a <u>single</u> instance of negative treatment among the 22 cases which have cited it.

Under <u>Howard</u>, Wulff is immune from all claims asserted against him in the FAC.  Accordingly, the court GRANTS Wulff's motion to dismiss with prejudice pursuant to 12(b)(6).  Because the court finds Wulff immune from the claims asserted in the FAC, it is unnecessary to decide whether communications made by Wulff during mediation are protected by Cal Civ Code § 47(b) or whether Vedatech and Subramanian have failed to exhaust state ADR-grievance remedies pursuant to Cal R Court 1622.

**B**

*Rule 11 Sanctions Against Wulff*

On August 12, 2004, Vedatech and Subramanian filed a motion for sanctions pursuant to FRCP 11 against Wulff, his attorneys Douglas Young and Jessica Nall and the entire law firm of Farella, Braun & Martel LLP (Farella).  Doc #61.

Throughout Wulff's motion to dismiss the FAC, Wulff

United States District Court

For the Northern District of California

refers to himself as a "court-appointed" mediator, thus deserving of <u>Howard</u>'s immunity.  Vedatech and Subramanian claim each time this label precedes Wulff's name, a "bad faith misrepresentation" to this court has occurred because the Santa Clara superior court never "appointed" Wulff as a mediator.

Vedatech and Subramanian never specify which part of Rule 11 Wulff has allegedly violated, but since the sanctions are directed at Wulff's defenses, the court presumes Rule 11(b)(2) is the relevant provision.  Rule 11(b)(2) prohibits claims and defenses that are not "warranted by existing law or by a nonfrivolous argument for the extension or modification" of such law.

Far from being unwarranted by existing law, Wulff's claim that he was a court-appointed mediator is objectively true.  Judge Komar's March 4, 2004, order states that all parties are to attend mediation before Wulff.  Vedatech and Subramanian, however, argue that this order does not make Wulff court-appointed:  "This order does not in any way 'appoint' Mr Wulff as a mediator, is not directed to Mr Wulff in any way or manner whatsoever, and does not create any official relationship between the Court and Mr Wulff." Doc #61 at 6.  Thus, because Judge Komar's order was directed to the parties, rather than Wulff himself, Wulff is not "court-appointed" even though all parties were ordered to mediate before him.  Rule 11 sanctions cannot be based upon such meaningless word play.

Further demonstrating the baseless nature of this Rule 11 motion, Subramanian himself recognizes that <u>Howard</u>'s grant of immunity applies to mediators <u>regardless</u> whether the mediator has

30

been court-appointed.  See Doc #87 (Nall Decl), Ex C (9/16/04
Transcript) at 54:25-55:2 (acknowledging that "<u>Howard v Drapkin</u>
does not necessitate that the mediator be a court-appointed
mediator in order to qualify under its reasoning for absolute
immunity.")

Vedatech and Subramanian's motion to impose Rule 11 upon
Wulff and his attorneys is DENIED.

The court may award to the person who prevails on a
motion under Rule 11 reasonable expenses, including attorney fees,
incurred in presenting or opposing the motion. See Advisory
Committee Notes to 1993 Amendments to FRCP 11.  Because courts may
award fees to a party that prevails on a Rule 11 motion, "a cross
motion under Rule 11 should rarely be needed."  Id.  As the target
of, and prevailing party on Vedatech's and Subramanian's Rule 11
motion, Wulff is entitled to an award of attorney fees.  The court
will employ the same calculation method explained above in awarding
St Paul its attorney fees under § 1447(c).  See *supra* Part III.

Wulff requests 197.8 hours for services performed by
attorneys at Farella in (1) researching and drafting an opposition
to Vedatech's and Subramanian's motion for Rule 11 sanctions, (2)
preparing for and attending oral argument on the Rule 11 motion and
(3) researching and drafting Wulff's counter-motion for sanctions.
Doc #87 (Nall Decl) at 3-4.  The court finds this to be an
unreasonable expenditure of attorney resources.

Among the factors to be taken into account in the
reasonable hours component of the lodestar calculation is (1) the
novelty and complexity of the issues and (2) the quality of the
attorneys' work.  <u>Morales v City of San Rafael</u>, 96 F3d 359, 364

United States District Court

For the Northern District of California

31

(9th Cir 1996).  Vedatech's and Subramanian's Rule 11 motion is essentially five pages in length and the alleged grounds for sanctions are hardly novel or complex.  And while the quality of the attorneys' work is high, Wulff is not entitled recover for extraordinary hours incurred by a legal dream team; he is entitled to recover for the number of hours a reasonably competent counsel would have billed.  Additionally, the court does not doubt that the Farella attorneys spent a large amount of time preparing and strengthening Wulff's defense; Wulff is a former Farella partner. The fact that Wulff's attorneys worked almost 200 hours, however, does not make this number of hours reasonable.

Indeed 197.8 hours represents about one-tenth of a lawyer's annual billable hours.  Put in this context, the unreasonableness of this extraordinary number of hours is evident. After reviewing (1) Vedatech's and Subramanian's Rule 11 motion, (2) Wulff's opposition, (3) the time needed to prepare oral argument and (4) Wulff's counter-motion for sanctions, the court concludes that it would take a reasonable lawyer about two weeks of billable time -- or 75 hours -- effectively to oppose Vedatech's and Subramanian's Rule 11 motion.  Multiplying this reasonable number of hours by the average market rate for lawyers in the San Francisco area calculated above, the court concludes that Wulff is entitled to $15,000 (75 hours x $200/hour).  Accordingly, Vedatech and Subramanian are jointly and severally liable to Wulff for $15,000 incurred in opposing the unnecessary Rule 11 motion.

Additionally, Wulff moves for sanctions against Vedatech and Subramanian pursuant to 28 USC § 1927.  Doc #86.  Wulff bases his § 1927 cross-motion on Vedatech and Subramanian's "obstinate

United States District Court

For the Northern District of California

refusal to acknowledge the effect of" <u>Howard</u>.   Id at 6.

"Any * * * person * * * who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct."  28 USC § 1927.  As this court has stated:  The purpose of § 1927 is "to deter attorneys from multiplying legal proceedings unnecessarily, and to compensate attorneys forced to endure such proceedings." <u>Winfield v Beverly Enterprises</u>, 1994 US Dist LEXIS 2855, *10 (ND Cal 1994) (Walker, J).  Sanctioning a party under § 1927 requires a "finding of recklessness or bad faith." <u>Barber v Miller</u>, 146 F3d 707, 711 (9th Cir 1998).  "Bad faith is present when a [party] knowingly or recklessly raises a frivolous argument." <u>Estate of Blas v Winkler</u>, 792 F2d 858, 860 (9th Cir 1986).  Finally, "section 1927 sanctions may be imposed on a *pro se* plaintiff." <u>Wages v IRS</u>, 915 F2d 1230, 1235-36 (9th Cir 1990).

The court agrees that Vedatech and Subramanian, recklessly <u>and</u> in bad faith, multiplied the legal proceedings against Wulff by recklessly raising frivolous arguments regarding the inapplicability of <u>Howard</u>.  Wulff <u>repeatedly</u> and <u>clearly</u> informed Vedatech and Subramanian of <u>Howard</u>'s holding regarding quasi-judicial immunity and urged Vedatech and Subramanian to dismiss Wulff from the current suit.  Vedatech and Subramanian refused and instead chose to make substantively indefensible attempts to distinguish <u>Howard</u>.  First, they argued that Wulff was not "court appointed," as was the psychologist in <u>Howard</u>.  This argument, however, has since been repudiated by Vedatech and Subramanian.  Doc #128 at 7 (admitting that "the psychologist in

United States District Court

For the Northern District of California

**Howard v Drapkin** was not 'court-appointed').  Next, Vedatech and
Subramanian argued that this court should not follow **Howard** because
(1) the holding regarding quasi-judicial immunity is mere "dictum,"
and (2) the California Supreme Court is imminently preparing to
overrule **Howard**.  These legal contentions are unwarranted by
existing law.  As discussed above, there is **no indication** that this
fourteen-year-old decision, relied upon by numerous lower courts,
is about to be overruled by the California Supreme Court; Vedatech
and Subramanian's conclusory assertion to the contrary is baseless
and not offered in good faith.  Finally, calling **Howard**'s quasi-
judicial immunity holding "dictum" evidences a fundamental
ignorance (either intentional or reckless) of the ability to read
case law.  This ignorance, however, is no defense to Wulff's cross-
motion for fees and costs.  See **Temple v WISAP USA**, 1993 US Dist
LEXIS 18453, *19 (D Neb 1993) ("Mistaken judgment, ignorance of law
or personal belief with regard to what the law should be," does not
negate the filing of a legally baseless document).

        No doubt Vedatech and Subramanian wish **Howard** did not
exist or that its holding could be characterized as dictum.  These
personal beliefs, however, do not constitute good faith legal
arguments.  The court concludes that Wulff should never have been
forced into defending himself against Vedatech and Subramanian's
vexatious, frivolous and legally deficient claims in the FAC; he
should have been dismissed from the outset.  Vedatech and
Subramanian, however, "unreasonably and vexatiously" multiplied the
proceedings in this case against Wulff as prohibited by § 1927.

        Accordingly, the court GRANTS Wulff's motion for § 1927
sanctions.  Wulff states that his attorneys billed 290.9 hours for

United States District Court

For the Northern District of California

services performed and $2,300 in costs incurred in researching and drafting his motion to dismiss the FAC.  Doc #87 at 4.  All attorneys at Farella who worked on Wulff's case, however, charged a uniform "reduced rate" of $225/hour.  Id.  Accordingly, Wulff claims he incurred $67,752.50 in attorney fees, costs and expenses associated with defending against the FAC (290.0 hours x $225/hour = $65,452.50 + $2,300 in costs = $67,752.50).  This amount seems too high.  This is confirmed by Wulff's request for only one-third of this amount, $22,584.16 or, alternatively, $70/hour ($22,584.16 - $2,300 = $20,284.16 / 290.9 = $69.73/hour).  Id at 5.

Farella does not fully explain the steep discount from their claimed normal billing rates.  This seems to confirm that counsel's so-called normal billing rates are the starting point for negotiations concerning fees.  In any event, in this case, the court need not explore all the details as the amount claimed by Wulff appears reasonable.  Applying the $200/hr average market rate (not the $225/hour rate of the Farella attorneys) to the requested $20,284.16 for attorney fees, it appears Wulff's request for fees is tantamount to seeking compensation for 101.42 hours reasonably expended in defending against the FAC ($20,284.16/$200 = 101.42).

Having considered the tangled and complicated nature of the legal and factual issues raised by Vedatech's and Subramanian's 49-page FAC, as well as the quality of the attorneys' work product, the court finds the claim for 101.42 hours of attorney services and $2,300 in legal research and duplicating costs to be reasonable in preparing and defending Wulff's motion to dismiss the hefty FAC. Accordingly, the court finds the following award of attorney fees and costs justified:  101.42 hours at $200/hour, yielding $20,284.

United States District Court

For the Northern District of California

The court then adds the $2,300 incurred in duplication and legal research, yielding the requested total of $22,584.

Accordingly, pursuant to § 1927, the court finds Subramanian and Vedatech jointly and severally liable to Wulff for $22,584 in attorney fees, costs and expenses incurred in defending against the FAC.

C

*St Paul's and QAD's Motions to Dismiss*

St Paul, QAD and QADKK all move to dismiss the FAC in its entirety pursuant to FRCP 12(b)(6).  Docs #44 (St Paul Mot), #45 (QAD/QADKK Mot).  Because the legal arguments offered by St Paul and QAD in support of their individual motions substantially overlap and because Vedatech and Subramanian address both motions in a single opposition memorandum, Doc #66, the court will address these two dispositive motions in tandem.

1

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988).  Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations."  Swierkiewicz v Sorema NA, 534 US 506, 515 (2002) (rejecting heightened pleading standards); Schmier v United States Court of Appeals for the Ninth Circuit, 279 F3d 817, 820 (9th Cir 2002) (rejecting conclusory allegations).

Under Rule 12(b)(6), a complaint "should not be dismissed

United States District Court

For the Northern District of California

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief." Hughes v Rowe, 449 US 5, 9 (1980) (citing Haines v Kerner, 404 US 519, 520 (1972)); see also Conley, 355 US at 45-46.  All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff.  See In re Silicon Graphics Inc Sec Lit, 183 F3d 970, 980 n10 (9th Cir 1999).  But "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v Golden State Warriors, 266 F3d 979, 988 (9th Cir 2001) (citing Clegg v Cult Awareness Network, 18 F3d 752, 754-55 (9th Cir 1994)).

        Review of a FRCP 12(b)(6) motion to dismiss is generally limited to the contents of the complaint, and the court may not consider other documents outside the pleadings.  Arpin v Santa Clara Valley Transp Agency, 261 F3d 912, 925 (9th Cir 2001).  The court may, however, consider documents attached to the complaint in connection with a motion to dismiss.  Parks School of Business, Inc v Symington, 51 F3d 1480, 1484 (9th Cir 1995).  Additionally, the court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  See Lapidus v Hecht, 232 F3d 679, 682 (9th Cir 2000) (internal quotation omitted).

## 2

### *Declaratory Relief*

        In their first cause of action, Vedatech and Subramanian ask this court for a declaratory judgment pursuant to 28 USC §

United States District Court

For the Northern District of California

2201.   Regarding St Paul, Vedatech and Subramanian seek fourteen judicial declarations.  Doc #35 (FAC) at 25-27.  This lengthy list of requested declarations, in essence, requests this court to declare that: (1) the settlement agreement with QAD is null and void; (2) St Paul had no authority to enter into this agreement and (3) St Paul has acted in bad faith and breached its fiduciary duties to Vedatech and Subramanian in entering into the settlement agreement.  Regarding QAD and QADKK, Vedatech and Subramanian ask this court to declare that:  (1) QAD and QADKK cannot rely upon the settlement agreement as a defense to Vedatech and Subramanian's affirmative claims in the second action and (2) any release of claims (affirmative or counterclaims) by QAD and QADKK under the settlement agreement are final.

        The court begins by noting the contradictory nature of these requested declarations; Vedatech and Subramanian ask the court to declare the settlement agreement non-binding on Vedatech and Subramanian, but then request the court declare it binding and final on QAD and QADKK.  More importantly, however, the court notes the duplicative nature of these declarations – the issues underlying these declarations (e g, the validity of the agreement, St Paul's authority to enter into the agreement and the presence of bad faith) are all squarely before the Santa Clara superior court in the twice-remanded consolidated action and in the now-remanded third action.  Whether the settlement agreement is binding, void, unconscionable or the product of bad faith are all arguments that can be made to Judge Komar, the judge who will actually be the one to enforce the settlement agreement in the consolidated action.  Moreover, Vedatech and Subramanian recognize this fact in their

opposition by stating:  "Any effect of any order preventing QAD and St Paul from proceeding with their "settlement," will be <u>exactly the same as an order that may be obtained within either of the underlying cases</u>."  Doc #66 at 6-7.  The court agrees with Vedatech and Subramanian's assertion.

Accordingly, Vedatech and Subramanian are asking the court to issue a declaratory judgment regarding certain contractual rights they, St Paul, QAD and QADKK <u>may</u> or <u>may not</u> have in two pending state court cases.  It is clear that Vedatech and Subramanian are wary regarding whether Judge Komar will decide to enforce the settlement agreement.  This apprehension, however, is insufficient to justify this court exercising its discretion to issue declaratory relief.  The Ninth Circuit has made clear that the purpose of declaratory relief in federal courts is not to "provide insurance against [a] state court deciding the * * * issues less favorably than a district court." <u>Exxon Shipping Co v Airport Depot Diner, Inc</u>, 120 F3d 166, 169 (9th Cir 1997). "Declaratory relief is not authorized so that lower federal courts can sit in judgment over state courts, <u>and it is not a substitute for removal</u>."  Id at 170 (emphasis added).  See also 26 CJS Declaratory Judgments § 120 ("The declaratory judgment procedure should not be employed by federal courts to control state action, or to bring into the federal courts actions which are pending in the state courts.").

Under <u>Exxon</u>, Vedatech and Subramanian cannot avoid Judge Komar's adjudication of issues squarely before him in state court by seeking declaratory relief in federal court.  Accordingly, the court refuses to exercise its discretion in issuing declaratory

United States District Court

For the Northern District of California

39

United States District Court

For the Northern District of California

relief and **GRANTS** St Paul's, QAD and QADKK's motions to dismiss with prejudice Vedatech and Subramanian's first cause of action for declaratory relief.


### 3

### *Fraud*

Next, Vedatech and Subramanian assert causes of action for fraud against St Paul, QAD and QADKK.  Doc #35 (FAC) at 31-35. Vedatech and Subramanian contend that St Paul intentionally "failed to disclose the nature and details of [its] prior contacts and relationship with Wulff."  Id at 32.  St Paul intentionally withheld this information, according to Vedatech and Subramanian, to "induce them to attend the mediation under terms that were favorable to [St Paul, QAD and QADKK] and harmful to [Vedatech and Subramanian]."  Id at 33.  Moreover, QAD and QADKK "became aware of [St Paul's] fraudulent schemes during the mediation," but "with an intent to harm Vedatech [and Subramanian] * * * QAD participated in the ongoing fraudulent scheme * * * rel[ying] upon the idea that the cloak of secrecy in mediation can be used to engage in fraudulent and collusive schemes * * *."  Id at 35.  Finally, Vedatech and Subramanian assert that they indeed relied upon these fraudulent omissions when they "consented" to attend the mediation and thus the fraud has caused them "heavy damages."  Id at 34.

To prevail on a claim for fraud in California, Vedatech and Subramanian must prove by a preponderance of the evidence that: (1) St Paul, QAD and QADKK made a knowingly false representation; (2) the false representation was made with the intent to deceive or induce reliance by Vedatech and Subramanian; (3) Vedatech and

40

**United States District Court**

For the Northern District of California

Subramanian justifiably relied on these false representations; and (4) they incurred damages resulting from the fraud.  <u>Smith v Allstate Insurance Co</u>, 160 F Supp 2d 1150, 1152 (SD Cal 2001) (citing <u>Wilkins v Nat'l Broadcasting Co</u>, 71 Cal App 4th 1066 (1999)).  Additionally, alleged material omissions (as alleged in this case) may constitute a "false representation" under the first element of fraud "when the defendant[s] had exclusive knowledge of material facts not known to the plaintiff[s]."  <u>Wilkins</u>, 71 Cal App 4th at 1082.

The court cannot grant St Paul's, QAD's and QADKK's 12(b)(6) motion to dismiss unless it appears beyond doubt that Vedatech and Subramanian can prove no set of facts in support of their fraud claim which would entitle them to relief.  <u>Hughes</u>, 449 US at 9.

Vedatech and Subramanian claim that St Paul, QAD and QADKK concealed a material fact (known only to them) when they failed to disclose that Wulff had conducted prior meditations for St Paul.  Assuming that St Paul withheld such information, under <u>Wilkins</u>, such an omission could meet the first element of a fraud claim.  Next, they claim that these omissions and representations were made to induce Vedatech and Subramanian to consent to mediation before Wulff and thus the second element of a fraud claim could be proven.  Vedatech and Subramanian's own submissions to the court, however, show that they can prove no set of facts that would meet the third and fourth elements of a fraud claim.  Vedatech and Subramanian assert that they "were unaware of the information that was deliberately withheld from them, and relied upon these misrepresentations  * * *  in consenting" to attend mediation before

41

United States District Court

For the Northern District of California

Wulff.  Doc #35 at 34.  No facts can support this assertion for, quite simply, it is not true.  Vedatech and Subramanian did not "consent" to mediate before Wulff; they were ordered -- twice -- by Judge Komar to attend the Wulff mediation.  Judge Komar first ordered Vedatech and Subramanian to attend this mediation on February 6, 2004.  Doc #84, Ex 6 (Med Order) ("It is ORDERED that Mani Subramanian is required by the Court to appear in person at mediation with St Paul and QAD parties in front of Randall Wulff * * *.  Failure to appear at the mediation will bring Mr Subramanian in contempt of the Court * * *.").  What is more, it was Vedatech and Subramanian, not any of the defendants, that supplied the court with a copy of Judge Komar's February 6, 2004, order.  On March 4, 2004, Judge Komar again ordered the parties to attend mediation before Wulff.  Doc #46, Ex B (2d Med Order).  Accordingly, Vedatech and Subramanian cannot prove facts showing their attendance at the mediation was based upon justifiable reliance on defendants' alleged omissions; their attendance was based upon court order.  Because they can offer no facts to prove this third element of fraud, Vedatech and Subramanian have failed to state a cause of action for fraud.

Because St Paul, QAD and QADKK cannot be held liable in tort for fraud, it follows that none can be liable for conspiracy to commit fraud.  "Standing alone, a conspiracy does no harm and engenders no tort liability.  It must be activated by the commission of an actual tort.  A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage."  Allied Equipment Corp v Litton Saudi Arabia Limited, 7 Cal 4th 503, 511

United States District Court

For the Northern District of California

1  (1994) (internal quotations and citation omitted).

2      For these reasons, St Paul's, QAD's and QADKK's motions

3  to dismiss with prejudice the FAC's claims of fraud and conspiracy

4  to commit fraud are GRANTED.

5

6                                    **4**

7                        *Constructive Fraud*

8      Next, Vedatech and St Paul assert a cause of action for

9  constructive fraud against St Paul.  Doc #35 at 36.  For the

10 reasons discussed above in connection with dismissal of the fraud

11 claims, Vedatech and Subramanian have failed to state a claim for

12 constructive fraud.

13     "Unlike actual fraud, constructive fraud depends on the

14 existence of a fiduciary relationship of some kind * * *.  The

15 elements of the cause of action for constructive fraud are: (1)

16 fiduciary relationship; (2) nondisclosure (breach of fiduciary

17 duty); (3) intent to deceive, and (4) reliance and resulting injury

18 (causation)." <u>Younan v Equifax, Inc</u>, 111 Cal App 3d 498, 516-17n14

19 (1980).  Vedatech and Subramanian assert that St Paul owed them a

20 fiduciary duty as an insurer and thus element one is met (QAD and

21 QADKK have no fiduciary relationship with Vedatech and

22 Subramanian).  Next, they claim that St Paul failed to disclose its

23 prior connections with Wulff with the intent to deceive Vedatech

24 and Subramanian into consenting to attend the mediation (element

25 two and three).  The fact that Judge Komar <u>ordered</u> Vedatech and

26 Subramanian to attend the Wulff mediation, however, prevents them

27 from proving facts to support the last element of constructive

28 fraud.  Again, Vedatech and Subramanian's attendance at the

mediation was not the product of reliance on any alleged omission by St Paul; <u>the attendance was court-ordered</u>.

For the same reasons discussed above in relation to conspiracy to commit fraud, Vedatech and Subramanian cannot state a cause of action for conspiracy to commit constructive fraud.  See *supra* Part IV(C)(3).  St Paul's motion to dismiss with prejudice the FAC's claim of constructive fraud and conspiracy to commit constructive fraud is GRANTED.

5

*Negligent Misrepresentation*

Next, Vedatech and Subramanian assert a cause of action against St Paul for negligent misrepresentation.  Doc #35 at 39.  The allegations underlying this claim are the same omissions used to form the basis for the fraud and constructive fraud claims (i e, failure to disclose St Paul's prior connection with Wulff).  In California, however, negligent misrepresentation requires a "positive" assertion or representation which is false; representation by omission is not sufficient.  <u>Byrum v Brand</u>, 219 Cal App 3d 926, 942 (1990).  See also <u>Sharp v Hawkins</u>, 2004 US Dist LEXIS 22928, *11 (ND Cal 2004) (stating that under California law, "omissions or non-disclosure * * * standing alone are insufficient to sustain a claim for negligent misrepresentation." (citing <u>Byrum</u>, 219 Cal App 3d at 942)).

Because Vedatech and Subramanian's claim for negligent misrepresentation is based upon non-disclosures, the court GRANTS St Paul's motion to dismiss with prejudice the FAC's claims for negligent misrepresentation.

44

United States District Court<br>For the Northern District of California

United States District Court

For the Northern District of California

**6**

*Insurance Bad Faith*

Next, Vedatech and Subramanian assert a cause of action against St Paul for "insurance bad faith (breach of covenant of good faith and fair dealing)." Doc #35 at 40-42. In support of this claim, Vedatech and Subramanian offer the court a laundry list of alleged bad faith acts committed over a period of years by St Paul. Id. The court, however, need not determine whether Vedatech and Subramanian have stated a cause of action for "insurance bad faith," for even if such a claim has been stated, the court must abstain from adjudicating this claim pursuant to Colorado River Water Conservation District v United States, 424 US 800 (1976).

As ordered above, the third action is remanded back to state court (State Docket No 1-02-CV-805197). See *supra* Part III. In the third action, St Paul seeks a judicial declaration regarding the scope of its duty to defend Vedatech and Subramanian in relation to the consolidated action as well as other issues surrounding the insurance policy. Vedatech and Subramanian filed a counterclaim in the this action alleging "insurance bad faith." In fact, just prior to removing the third action to this court, Vedatech and Subramanian filed their 112-page fourth amended cross-complaint against St Paul in state court. See 1-02-CV-805197, Doc #121. Moreover, in asserting the claim for insurance bad faith, the FAC directs the court's attention to the state court fourth amended cross-complaint in the third action to detail fully the bad faith allegations against St Paul. Doc #35 (FAC) at 40. Because the court has now remanded the third action back to state court, there are now two "insurance bad faith" claims asserted by Vedatech

United States District Court

For the Northern District of California

and Subramanian against St Paul; one is in state court and the other is in federal court.

As this court has recently stated, "the Colorado River doctrine permits [dismissal of a case] in the interests of wise judicial administration when substantially similar claims are pending in state court." Le v County of Contra Costa, 1999 US Dist LEXIS 19611, *2 (ND Cal 1999) (Walker, J) (citations omitted). "The threshold question is whether the state and federal suits are substantially similar." Id at 3 (citing Nakash v Marciano, 882 F2d 1411, 1416 (9th Cir 1989)). "If so, the factors to consider are: (1) the desirability of avoiding piecemeal litigation; (2) the inconvenience of the federal forum; (3) the order in which jurisdiction was obtained; (4) the source of the governing law and (5) whether the state court proceedings could adequately protect the federal plaintiff's rights." Id (citing Martinez v Newport Beach City, 125 F3d 777, 785 (9th Cir 1997)). Additionally, the court may consider whether the plaintiff in the federal action has engaged in forum shopping. Silvaco Data Systems, Inc v Technology Modeling Associates, Inc, 896 F Supp 973, 975 (ND Cal 1995) (citing Nakash, 882 F2d at 1417).

Here, the combination of these factors make a compelling case for abstention under Colorado River. First, the state and federal suits involve the same parties and claims and arise out of the same conduct. California law regarding contracts and insurance will govern both cases. Piecemeal litigation would certainly result if the federal action were to proceed. The state court obtained jurisdiction first; well over two years prior to the federal court. The convenience factor is neutral. With respect to

46

United States District Court

For the Northern District of California

the rights of Vedatech and Subramanian, the court is convinced that
the state court is up to the task of deciding state law claims
arising from an alleged breach of the duty of good faith and fair
dealing.   Finally, to say that Vedatech and Subramanian have
engaged in forum shopping would be an understatement; they are
desperate to obtain a federal forum to prevent the state court from
enforcing the settlement agreement, and they have employed several
inappropriate means to attain this forum.   These reasons, plus an
obvious advancement of judicial economy, convince the court it
should abstain from adjudicating Vedatech and Subramanian's claim
for insurance bad faith to avoid duplicative state proceeding.

        "[D]istrict courts must stay, rather than dismiss, an
action when they determine that they should defer to the state
court proceedings under Colorado River."   Coopers & Lybrand v Sun-
Diamond Growers of California, 912 F2d 1135, 1138 (9th Cir 1990)
(emphasis added).   Accordingly, the court DENIES St Paul's motion
to dismiss the claim for insurance bad faith.   Rather, the court
STAYS adjudication of this claim pending the resolution of
Vedatech's and Subrmanian's fourth amended counterclaim in the
third action in the Santa Clara superior court.

        Vedatech and Subramanian shall file with the court a
status report within 30 days of disposition of the insurance bad
faith claim in state court.   Failure timely to file such a report
shall be deemed a failure to prosecute and result in dismissal of
this action.   To be clear, Vedatech and Subramanian are not to file
any other memoranda relating to this cause of action save the above
described status report.

**47**

United States District Court

For the Northern District of California

**7**

*Unfair Competition*

Finally, Vedatech and Subramanian assert a claim for unfair competition against St Paul, QAD and QADKK pursuant to Cal Bus & Prof Code § 17200 et seq. Cal Bus & Prof Code § 17203 provides, in pertinent part, that:

> any person who * * * has engaged * * * in unfair competition may be enjoined * * *. The court may make such orders or judgments * * * as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

For the purposes of the current claim, the term "unfair competition" is defined as "any unlawful, unfair or fraudulent business act or practice." Cal Bus & Prof Code § 17200.

According to Vedatech and Subramanian, St Paul, QAD and QADKK have engaged in a "pattern of behavior that is unlawful, unfair or fraudulent," including (as with most other claims in the FAC): (1) St Paul's failure to disclose its prior contacts with Wulff, (2) fraudulently obtaining Vedatech and Subramanian's "consent" to attend the mediation and (3) QAD and QADKK learning of such deception and failing to disclose it in order to "benefit to the tune of $500,000." Doc #35 (FAC) at 42-46. In essence, Vedatech and Subramanian claim that St Paul and QAD engaged in unfair competition by fraudulently obtaining Vedatech and Subramanian's consent to attend mediation and the resulting injury was the settlement agreement between St Paul, QAD and QADKK which (1) deprived Vedatech and Subramanian of their right to pursue affirmative claims against QAD and QADKK and (2) unjustly enriched QAD and QADKK by $500,000 which belonged to Vedatech and

United States District Court

For the Northern District of California

Subramanian.

The FAC seeks restitution from QAD and QADKK in the amount of $500,000 and requests (nebulously) the court to order St Paul to disgorge "all benefits that are due to Vedatech under the California Unfair Competition laws." Vedatech and Subramanian are careful to frame all requested relief in the form of equitable remedies, as § 17203 does <u>not</u> allow damages to be recovered. <u>Korea Supply Co v Lockheed Martin Corp</u>, 29 Cal 4th 1134, 1144 (2003). For several reasons, Vedatech and Subramanian can prove no set of facts to support this cause of action and thus the claim must be dismissed pursuant to FRCP 12(b)(6).

First, as the court discussed above, no fraudulent or unfair practice on the part of St Paul, QAD or QADKK caused Vedatech and Subramanian to attend the mediation; attendance was court-ordered my Judge Komar –– twice. Next, assuming arguendo that the alleged non-disclosures did trick Vedatech and Subramanian into attending the Wulff mediation, they cannot prove that the resulting settlement agreement (the geneses of all ensuing "damages") was, in the words of § 17203, "acquired by means of such unfair competition." The settlement agreement explicitly states that "it is not intended to impair the prosecution by Vedatech of any and all affirmative claims that may exists with respect to the First or Second Action * * *." Doc #35 (FAC), Ex A (Sett Agreement) at 5 ¶8. Moreover, as mentioned above, the settlement agreement was not entered into until <u>after</u> Vedatech and Subramanian left the mediation. If Vedatech and Subramanian were not present when the settlement agreement was negotiated, it follows that the settlement agreement could not have been acquired by the means of

49

1   St Paul, QAD and QADKK's alleged fraudulent scheme to trick

2   Vedatech and Subramanian into attending the mediation.

3          Finally, even if St Paul, QAD and QADKK engaged in unfair

4   practices (which the court assumes solely for this motion) and even

5   if these practices tricked Vedatech and Subramanian into attending

6   the mediation (which clearly they did not), Vedatech and

7   Subramanian can prove no facts showing that they are entitled to

8   any equitable relief.  First, Vedatech and Subramanian's nebulous

9   assertion that they are entitled to require St Paul to "disgorge

10  all such benefits that are due" to Vedatech and Subrmanian is

11  conclusory and unwarranted and thus does not suffice to state a

12  cause of action.  St Paul received nothing via the settlement

13  agreement that the court can order them to disgorge (if anything,

14  St Paul was forced to pay $500,000).  Nor can Vedatech and

15  Subramanian prove that they are entitled to restitution of the

16  $500,000 which was paid to QAD and QADKK by St Paul.

17  "[R]estitution [is an order] compelling a [] defendant to return

18  money obtained through an unfair business practice to those persons

19  * * * who had an ownership interest in the property * * *."  Korea

20  Supply Co, 29 Cal 4th at 1144-45.  Vedatech and Subramanian,

21  however, have pled no facts showing that they have any ownership

22  interest in the $500,000 St Paul paid to QAD and QADKK.  Rather,

23  the FAC simply states that St Paul paid QAD and QADKK the $500,000

24  "from funds that [were] held in trust for the Vedatech parties."

25  Doc #35 at 47.  This legal conclusion, however, is not supported by

26  any facts pled in the FAC and legal conclusions, standing alone,

27  cannot suffice to state a cause of action.  See Sprewell, 266 F3d

28  at 988 ("the court [is not] required to accept as true allegations

United States District Court

For the Northern District of California

1  that are merely conclusory, unwarranted deductions of fact, or

2  unreasonable inferences.").

3      For the numerous and substantial reasons discussed above,

4  St Paul's, QAD's and QADKK's motions to dismiss with prejudice the

5  FAC's seventh cause of action for unfair competition are GRANTED.

6

7                              IV

8              *QAD and QADKK Motion for Sanctions*

9      Finally, QAD and QADKK move this court to sanction

10 Vedatech and Subramanian pursuant to FRCP 11.  The court, however,

11 has already sanctioned Vedatech, Subramanian and Gonzaga for the

12 improper behavior each has demonstrated throughout this litigation

13 and the court does not believe any further Rule 11 sanctions are

14 appropriate at this time.  Additionally, QAD and QADKK move for

15 sanctions pursuant to § 1927.  The court does not believe such

16 sanctions are appropriate.  QAD and QADKK have not had to defend

17 two frivolous petitions for removal (at least not in the present

18 action) as St Paul has had to do, nor have QAD and QADKK had to

19 defend a frivolous Rule 11 motion as Wulff has had to do.  QAD and

20 QADKK were named in the FAC, they filed a motion to dismiss and the

21 motion is now being adjudicated.  No doubt QAD and QADKK have

22 incurred costs and fees in defending against the FAC.  But every

23 defendant incurs costs and fees.  The costs and fees awarded to St

24 Paul and Wulff above did not stem from simply being named in the

25 FAC and having to defend themselves.

26     QAD and QADKK's motion to sanction is DENIED.

27 //

28 //

51

United States District Court

For the Northern District of California

V

In sum, the court GRANTS St Paul's motions (04-1403 Docs ##11, 40) (C-04-1818 Docs ##7, 19) to remand and REMANDS Nos 04-1818 and 04-1403 to Santa Clara superior court.  The court ORDERS Vedatech and Subramanian to pay $20,738.75 to St Paul pursuant to 28 USC § 1447(c).  Additionally, the court GRANTS St Paul's motion for Rule 11 sanctions (04-1249 Doc #97) (04-1403 Doc #52) (04-1818 Doc #32) and SANCTIONS Subramanian $1,000 and SANCTIONS Gonzaga $5,000.  These sanctions are payable to the court on or before July 25, 2005.

The court GRANTS Wulff's motion to dismiss (04-1249 Doc #52).  The court DENIES Vedatech's and Subramanian's motion for Rule 11 sanctions against Wulff (04-1249 Doc #61).  The court ORDERS Vedatech and Subramanian to pay Wulff $15,000 for fees and costs incurred in opposing the Rule 11 motion.  Additionally, the court GRANTS Wulff's motion for sanctions pursuant to § 1927 (04-1249 Doc #86) and ORDERS Vedatech and Subramanian to pay $22,584 to Wulff.

QAD's and QADKK's motions to dismiss with prejudice all claims asserted against them are GRANTED (04-1249 Doc #44).  QAD and QADKK's motion for sanctions are DENIED (04-1249 Doc #106).  St Paul's motion to dismiss the FAC is GRANTED IN PART (04-1249 Doc #45).  The court STAYS adjudication of Vedatech's and Subramanian's claim for insurance bad faith against St Paul.

Hence, every action and claim (save one) to which Vedatech is a party has been either remanded or dismissed and the one remaining claim has been stayed pending state court resolution. Accordingly, the court does not find it appropriate to rule on

United States District Court

For the Northern District of California

1  Gonzaga's and Knopf's second motion to withdraw as counsel for
2  Vedatech.  If they still wish to withdraw as counsel, they should
3  address their arguments to the Santa Clara superior court.
4  Accordingly, the second motion to withdraw is DENIED as moot (04-
5  1249 Doc #148) (04-1403 Doc #70) (04-1818 Doc #51).  Gonzaga and
6  Knopf's motions to strike are DENIED as moot.  (04-1249 Doc #154)
7  (04-1403 Doc #74) (04-1818 Doc #55).  Subramanian and Vedatech's
8  motion for further oral argument are DENIED as moot.  (04-1249 Doc
9  #112) (04-1403 Doc #63) (04-1818 Doc #43).  Finally, Subramanian
10  and Vedatech's request to remain an e-filer in 04-1403 is DENIED as
11  moot.

12       The clerk shall administratively close the file.  This
13  does not represent a final adjudication but an administrative
14  convenience for the court.  Upon receipt of the state court's order
15  resolving the insurance bad faith claim in the state court, the
16  clerk shall re-open the file upon a request of one of the parties.

17

18

19       IT IS SO ORDERED.

20

21  _____

22  VAUGHN R WALKER

23  United States District Chief Judge

24

25

26

27

28

53